**Mary BROWN, Plaintiff,**

v.

**LaSALLE NORTHWEST NATIONAL BANK, Defendant.**

No. 92 C 8392.

United States District Court, N.D. Illinois, E.D.

April 26, 1993.

---

Daniel A. Edelman, Cathleen M. Combs, Francine Schwartz, Tara Goodwin Redmond, Law Offices of Daniel A. Edelman, Chicago, IL, for plaintiff.

James E. Spiotto, Michael T. Benz, Chapman & Cutler, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

HART, District Judge.

In an order dated March 25, 1993 (*Brown v. LaSalle Northwest National Bank*, 1993 WL 96494 (N.D.Ill. March 29, 1993)), it was held that plaintiff had failed to satisfy the requirements of Fed.R.Civ.P. 9(b) in pleading a pattern of fraudulent racketeering activity. Therefore, plaintiff's allegations of a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, were found to be deficient and her cause of action was dismissed. Judgment was entered on March 29, 1993. Plaintiff then timely moved to file an amended complaint curing the deficiency previously held to exist. Plaintiff's motion to vacate judgment to permit amendment of her complaint is presently pending.

Plaintiff's proposed amended complaint cures the Rule 9(b) deficiency that her original complaint had. She now alleges four other specific transactions that allegedly were procured with fraud. She has adequately identified these transactions and the nature of the fraud so as to satisfy Rule 9(b). Contrary to plaintiff's statement in her motion, the prior decision did not hold that plaintiff otherwise adequately alleged a RICO violation. It was only assumed that plaintiff otherwise alleged a RICO violation.[1] The grounds that defendant raised for dismissal of the original complaint will now be considered as regards the amended complaint.

Named plaintiff Mary Brown brings this putative class action against defendant LaSalle Northwest National Bank ("LaSalle"), which allegedly financed her purchase of an automobile. According to the allegations of the complaint, plaintiff purchased a used automobile from Lake Automotive ("Lake"), but was unable to register it because Lake did not have good title to the automobile. Lake arranged financing through defendant. Plaintiff contends that regulations of the Federal Trade Commission ("FTC") required that certain provisions be in the loan documents. In particular, there should have been a provision that would allow plaintiff to raise a defense of bad title to any attempt to collect on the loan. No such provision is in the loan documents. Plaintiff's complaint contains two counts. Count I is a federal claim for RICO violations. Count II is a state law claim pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"), Ill.Rev. Stat. ch. 121½, ¶ 261 *et seq.* (1991) (recodified as 815 ILCS 505 (1993)).

The FTC regulation that plaintiff relies upon provides:

In connection with any sale or lease of goods or services to consumers, in or affecting commerce as "commerce" is defined in the Federal Trade Commission Act, it is an unfair or deceptive act or practice within the meaning of Section 5 of that Act for a seller, directly or indirectly, to: . . .

(b) Accept, as full or partial payment for such sale or lease, the proceeds of any purchase money loan (as purchase money loan is defined herein), unless any consumer credit contract made in connection with such purchase money loan contains the following provision in at least ten point, bold face, type:

NOTICE

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED

---

1. "For purposes of deciding the motion to dismiss, it can be assumed that a business arrangement or referral relationship existed so that the notice should have been included in the loan documents. It can also be assumed that mail or wire fraud by failure to disclose could be supported by these facts and that sufficient allegations of a RICO enterprise have been made. Even making these assumptions, plaintiff's RICO claim fails because a pattern of racketeering activity is not adequately alleged." March 25 Order at 5 (1993 WL 96494 at *2).

AMOUNTS PAID BY THE DEBTOR HEREUNDER.

16 C.F.R. § 433.2(b).

Plaintiff's claim is not one directly under this regulation; it is a RICO claim. However, as plaintiff recognizes, if the FTC regulation does not apply to Brown's transaction, plaintiff has no RICO claim.

The regulations define a purchase money loan as a "cash advance which is received by a consumer in return for a 'Finance Charge' . . ., which is applied, in whole or substantial part, to a purchase of goods or services from a seller who (1) refers consumers to the creditor or (2) is affiliated with the creditor by common control, contract, or business arrangement." 16 C.F.R. § 433.1(d). A business arrangement is defined as "[a]ny understanding, procedure, course of dealing, or arrangement, formal or informal, between a creditor and a seller, in connection with the sale of goods or services to consumers or the financing thereof." *Id.* § 433.1(g).

■ On a motion to dismiss, all the well-pleaded factual allegations of the complaint are assumed to be true with all reasonable inferences drawn in the light most favorable to plaintiff. *National Organization for Women, Inc. v. Scheidler,* 968 F.2d 612, 616 (7th Cir.1992). "An action may only be dismissed if the complaining party 'can prove no set of facts in support of [her] claim which would entitle [her] to relief.'" *Id.* (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).

■ Plaintiff alleges that defendant had an arrangement with State Farm insurance agents to refer automobile customers to defendant for financing. Automobile dealers, including Lake, would refer customers to particular State Farm agents for obtaining insurance and financing information. The State Farm agents would then refer the customers to defendant for financing. Defendant supplied form loan documents to the State Farm agents and automobile dealers. Defendant would not accept any note that contained the provision required by the FTC

regulation. It is further alleged that defendant intentionally made this arrangement to avoid informing customers of their rights under the FTC regulation and to attempt to cover up the fact that there was an arrangement to which the regulation applied. Defendant also hid from customers its relationship with the State Farm agents and automobile dealers.

■ The allegations of the amended complaint support that there was a business arrangement or referral relationship between defendant and Lake, thus making the requirements of § 433.2(b) applicable to the loans to Brown and the putative class members. It is also adequately alleged that such an arrangement existed and continues to exist[2] between defendant and other automobile dealers, and that it also existed for other customers of Lake.

Defendant argues that the duty to have the notice included in loan documents is only imposed on a seller of consumer goods, not on a lender such as defendant. That issue would have to be resolved if plaintiff were making a claim directly under the regulation. Plaintiff, however, brings a RICO claim based on predicate acts of mail and wire fraud. A necessary element of plaintiff's claim is that defendant was a participant in a scheme to defraud. As is discussed below, defendant can be part of a scheme to defraud consumers even if the regulation does not directly apply to lenders.

■ In its opening brief, defendant argued that an omission can never support a RICO complaint. In its reply, it focuses its argument, as it should, on predicate acts of mail and wire fraud and concedes that omissions can support such a claim, but only under limited circumstances that defendant contends are not alleged in the present case. Where there is a duty to disclose, an elaborate coverup, a violation of a fiduciary duty, or the omission is accompanied by affirmative misrepresentations, an omission can support a claim of mail or wire fraud.[3] *See*

---

**2.** It is alleged in the complaint that Lake is no longer in business.

**3.** Similar limitations are placed on claims based on misrepresentations of law. *See Marcial v. Coronet Insurance Co.,* 122 F.R.D. 529, 533–34

*United States v. Biesiadecki,* 933 F.2d 539, 542–43 (7th Cir.1991); *Reynolds v. East Dyer Development Co.,* 882 F.2d 1249, 1252–53 (7th Cir.1989). Here, it is alleged that defendant set up an indirect relationship with the intent to cover up the facts that would show that the FTC regulation applied. This includes allegations that defendant intentionally covered up its relationship with the other parties involved. Further, it is alleged that defendant supplied the document that intentionally omitted the required language. Even if only the automobile dealers, as sellers, directly had the duty to ensure that the notice language was in the loan documents, there is a sufficient allegation that defendant aided and abetted the violation of that duty. There are sufficient allegations of a scheme to defraud, as well as allegations of a nexus with the wires and mails. Mail and wire fraud violations have been alleged.

■ Defendant also contends that plaintiff has failed to adequately allege a pattern of racketeering activity as is required for a civil RICO claim. *See Midwest Grinding Co. v. Spitz,* 976 F.2d 1016, 1022–25 (7th Cir.1992). Plaintiff alleges that defendant used numerous insurance agents at numerous automobile dealers to defraud numerous customers of their right to have defenses against defendant's collection of loans on automobile transactions that went bad. Plaintiff makes specific allegations as to plaintiff's transaction and the transactions of four other automobile customers financed by LaSalle, but who purchased automobiles from other dealers. While it is alleged that Lake is no longer in business, it is also alleged that the scheme continues to be perpetrated with other automobile dealers. A pattern of racketeering activity is adequately alleged in the amended complaint.

■ Plaintiff claims violations of 18 U.S.C. § 1962(c) which provides: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity...." Defendant contends that a nexus with an enterprise has not been adequately alleged. The alleged enterprise is a group of corporations, including LaSalle, which are all subsidiaries owned by ABN AMRO North America, Inc.

As to § 1962(c), the Supreme Court recently held:

> In order to 'participate, directly or indirectly, in the conduct of such enterprise's affairs' one must have some part in directing those affairs. Of course the word 'participate' makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs, just as the phrase 'directly or indirectly' makes clear that RICO liability is not limited to those with a formal position in the enterprise, but *some* part in directing the enterprise's affairs is required.

> \*  \*  \*  \*  \*  \*

> We agree that liability under § 1962(c) is not limited to upper management, but we disagree that the 'operation or management' test is inconsistent with this proposition. An enterprise is 'operated' not just by upper management but also by lower-rung participants in the enterprise who are under the direction of upper management. An enterprise also might be 'operated' or 'managed' by others 'associated with' the enterprise who exert control over it as, for example, by bribery.

*Reves v. Ernst & Young,* —— U.S. ——, ——, 113 S.Ct. 1163, 1170, 1173, 122 L.Ed.2d 525 (1993).

It is alleged that LaSalle itself devised and implemented the scheme alleged in the amended complaint. The scheme was an affair of the ABN enterprise and LaSalle had sufficient control over the scheme to satisfy the standard set forth in *Reves.* A sufficient nexus with the enterprise has been alleged.

■ Defendant argues that the Consumer Fraud Act claim should be dismissed because the FTC regulation imposes no duty on the lender and does not permit an award of damages against the lender under the pres-

(N.D.Ill.1988), *aff'd,* 880 F.2d 954 (7th Cir.1989). To the extent the alleged misrepresentations were misrepresentations of law, not fact, a fraud claim could still be stated.

ent type of situation. Whether those contentions are true need not be determined. Although it incorporates FTC regulations, the Consumer Fraud Act is not limited to violations of the FTC regulations. *Heastie v. Community Bank of Greater Peoria*, 727 F.Supp. 1133, 1138 (N.D.Ill.1989). Plaintiff has adequately alleged participation in a fraudulent scheme intended to deceive automobile customers and avoid the requirements of the FTC regulations. A violation of the Consumer Fraud Act has been adequately alleged.

IT IS THEREFORE ORDERED that:

(1) Plaintiff's motion to amend the judgment to permit her leave to file an amended complaint [20] is granted.

(2) The judgment entered on March 29, 1993 is vacated and plaintiff's cause of action is reinstated. Plaintiff is granted leave to file her amended complaint. Defendant shall answer the amended complaint by May 10, 1993.

(3) All discovery shall be completed by August 16, 1993. On May 11, 1993 at 9:15 a.m., the parties shall submit in open court an original and copy of a joint discovery plan with a discovery completion date of August 30, 1993.

(4) On or before May 11, 1993; plaintiff shall present her motion for class certification.